UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Jay Kripalani M.D., P.C.,

           Plaintiff,

      v.

Independence Blue Cross,

           Defendant.

23-cv-04225 (NRM) (ARL)

**MEMORANDUM AND ORDER**

NINA R. MORRISON, United States District Judge:

Plaintiff Jay Kripalani M.D., P.C., a healthcare provider, brings this suit against Defendant Independence Blue Cross, the insurer of an emergency patient treated by Plaintiff.  Plaintiff alleges that after the parties negotiated and agreed on a payment amount for the services rendered by Plaintiff, Defendant failed to pay the amount and thus (1) breached the contract, or in the alternative (2) was unjustly enriched under a quasi-contract theory, or in the alternative (3) violated the Employee Retirement Income Security Act ("ERISA").

Defendants move to dismiss for failure to state a claim, arguing that (1) Plaintiff's state law claims are expressly preempted by ERISA; (2) Plaintiff's unjust enrichment claim fails to state a claim as a matter of law; (3) Plaintiff has no "standing" under ERISA; and (4) there is no private right of action under 42 U.S.C. 300gg-19a.  For the reasons that follow, Defendant's motion to dismiss is denied because Plaintiff has (1) adequately pled facts in the Complaint that are sufficient to

1

state claims for relief under New York law and ERISA and (2) sufficiently pled an implied assignment of benefits under ERISA.

However, in denying the motion to dismiss, the Court does so without prejudice to Defendant's ability to renew its challenges later in the litigation on a more fully developed factual record that includes sources of evidence outside the Complaint (including, but not limited to, arguments based on the contract between the insured and Defendant, which the Court does not consider in deciding the motion to dismiss).

## **FACTUAL BACKGROUND**

Plaintiff Jay Kripalani M.D., P.C. is a healthcare practitioner who provides services as the President of the professional corporation formed under his name, with an address in Carle Place, NY. Compl. ¶ 5, ECF No. 1.[1] Plaintiff brings this suit against Defendant Independence Blue Cross, an insurance company with offices located in Philadelphia, PA. *Id.* at ¶ 7. It is an "independent, locally operated" company. *Id.* at ¶ 6. It is also an affiliate of the Blue Cross & Blue Shield Association, which consists of similar companies. *Id.* at ¶ 7.

On June 7, 2023, Plaintiff filed the instant action. He alleges that on September 2, 2020, Patient B.H. (the "Patient"), who is a third party to this suit, was admitted to the hospital on an emergency basis and remained there as an inpatient until September 14, 2020. *Id.* at ¶¶ 8, 17. Dr. Kripalani was the medical on-call

---

[1] The Complaint refers interchangeably to Plaintiff, a professional corporation, and Dr. Kripalani, the individual.

2

coverage doctor on September 2, 2020, and provided emergency medical services and continuing care services to Patient. *Id.* at ¶ 18.

Patient receives insurance coverage under a "self-funded health plan" maintained by Patient's employer. *Id.* at ¶ 14. Defendant acts as an administrator of Patient's health plan and "authorizes, processes and pays health claims by providers . . . for all employees" of Patient's employer. *Id.* Plaintiff — an out-of-network provider — billed $324,974.00 (the "Billed Amount") to Defendant. *Id.* at ¶¶ 13, 23. Plaintiff and Defendant engaged in a few rounds of telephone negotiations, as is customary between out-of-network providers and insurance companies. *Id.* at ¶ 26. The negotiations resulted in Defendant agreeing to a total payment of $259,979.20 to Plaintiff (the "Negotiated Amount"), a 20% reduction from the Billed Amount. *Id.* at ¶ 28. While the telephone negotiations were ongoing, Defendant made a "random and arbitrary" payment in the amount of $1,961.99 to Plaintiff. *Id.* at ¶ 27.

Defendant sent a letter memorializing the agreement dated July 12, 2021. *Id.* at ¶ 29. Plaintiff accepted the Negotiated Amount of $259,979.20 on August 18, 2021, and submitted the signed letter to Defendant as required by the letter agreement. *Id.* at ¶¶ 29–30. Since then, Defendant has failed to make payment of the balance of the Negotiated Amount. *Id.* at ¶ 31.

In the past, Plaintiff has received payment from other associate insurance companies within the Blue Cross & Blue Shield Association after providing services to other patients who were insured by those associates. *Id.* at ¶ 33.

Plaintiff asserts three causes of action. First, Plaintiff alleges breach of contract (First Cause of Action) under New York State law based on "the Agreement," which appears to refer to the letter settling the outstanding bills for a Negotiated Amount signed by both parties in July/August 2021. It alleges that Defendant breached the Agreement by failing to and refusing to pay the Negotiated Amount. *Id.* at ¶¶ 35–39. Second, Plaintiff alleges unjust enrichment (Alternative Second Cause of Action) under New York State law in the alternative, in the event the Court finds there is no valid contract but an implied-in-fact one. Plaintiff alleges that Defendant has "benefitted and [is] unjustly enriched" by its failure to pay Plaintiff for the medical care provided to Patient, and that Defendant is "wrongfully in possession of either the difference between (a) the Negotiated Amount and the actual payment made by the Defendant, or (b) the Billed Amount and the actual payment made by the Defendant." *Id.* at ¶¶ 40–49.

Third, Plaintiff alleges that Defendant violated ERISA (Alternative Third Cause of Action). In particular, Plaintiff asserts that he may seek to recover funds owed for medical services he provided to Patient under 42 U.S.C. § 300gg-19a (which is a part of the Affordable Care Act, incorporated into ERISA) and 26 C.F.R. § 54.9815-2719A(b) (part of the Internal Revenue Code and ERISA). Both provisions require that an insurer provides coverage such that a patient who receives emergency services from an out-of-network provider does not pay more than they would have paid if an in-network provider had provided the services. *Id.* at ¶¶ 52–54. Plaintiff alleges that by failing to properly reimburse Plaintiff, Defendant is "in violation of

4

applicable provision of ERISA." *Id.* at ¶ 56.  Plaintiff also alleges that Defendant is a fiduciary as the term is defined in ERISA § 3(21)(A).  29 U.S.C. § 1002(21)(A).[2]

On February 22, 2024, Defendant submitted a fully briefed motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Def. Mot. to Dismiss, ECF No. 12; Def. Mem. of L. in Supp. of Mot. to Dismiss ("Def. Mem."), ECF No. 12-3.  Defendant attached a declaration by Andrew G. Smith, a Director of Sales for National Accounts employed by Defendant ("Smith Declaration," ECF No. 12-1), as well as a Summary Plan Description ("Plan Description," ECF No. 12-2).  In his declaration, Smith alleges that the plan description is a "true and correct copy of the 2020 Summary of Benefits, as provided by Comcast/NBC Universal, which was in effect on the dates of service at issue."[3]  Smith Declaration at 1.  Plaintiff filed a memorandum in opposition to the motion on March 25, 2024.  Pl. Mem. of L. in Opp'n of Mot. to Dismiss ("Pl. Mem."), ECF No. 13.

Defendant brings four primary arguments as to why Plaintiff's claims should be dismissed.  *First*, it argues that Plaintiff's state law claims for breach of contract and unjust enrichment are expressly preempted by ERISA.  *Second*, it argues that Plaintiff's unjust enrichment claim fails to state a claim as a matter of law.  *Third*, it

---

[2] Plaintiff did not plead that Defendant breached any fiduciary duties.  Neither party raises arguments about Defendant's alleged fiduciary role.

[3] Plaintiff does not allege that the Patient worked at Comcast/NBC Universal. Patient's identity is not disclosed in the Complaint pursuant to HIPAA, but has been provided to Defendant.  Compl. at ¶ 8 n.1.

argues that Plaintiff does not have "standing," *i.e.*, a right of action, under ERISA.[4]

*Fourth*, it argues that there is no private right of action under 42 U.S.C. § 300gg-19a(b) and its accompanying regulations.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). On such a motion, a court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may never[the]less consider it

---

[4] The parties use the word "standing" in their filings, but both the Supreme Court and Second Circuit have clarified that this appellation is a misnomer. "[W]hat has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)).

where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)). "For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint [and] mere notice or possession is not enough." *Id.* (quotation and alteration omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

## DISCUSSION

For the reasons discussed below, the Court finds that Plaintiff is not barred from bringing his state law claims, that Plaintiff has adequately pled an unjust enrichment claim, and that Plaintiff may proceed with his ERISA claim.

The Court also finds that Plaintiff has pled facts that, viewed in the light most favorable to him, plausibly allege an assignment of the right to collect payments for medical services under ERISA (what the parties refer to as "standing" under ERISA), based on Defendant's initial payment to Plaintiff and Plaintiff's previous dealings with the Blue Cross & Blue Shield Association's other associate insurance companies. As such, the Court need not reach Plaintiff's argument that the Affordable Care Act should be interpreted to afford medical providers like Plaintiff a private right of action to pursue such claims.

## I.   Plaintiff's State Law Claims Are Not Expressly Preempted by ERISA

As a preliminary matter, both parties conflate complete preemption and express preemption when their intended point of contention is the latter, so a brief

comparison of the two types of preemption is in order. *See* Def. Mem. at 10; Pl. Mem. at 12. Complete preemption is the doctrine bearing on federal subject matter jurisdiction, that "a plaintiff's state cause of action may be recast as a federal claim for relief, making its removal by the defendant proper on the basis of federal question jurisdiction." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009)) (cleaned up). In the ERISA context, the statute's civil enforcement provision completely preempts certain state law claims. ERISA § 502(a); 29 U.S.C. § 1132(a). A complaint raising such completely preempted claims are "necessarily federal in character," and the claims may be removed to federal court. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987).

Express preemption, on the other hand, is one of the three ordinary forms of defensive preemption and does not affect federal jurisdiction. A claim is expressly preempted when "Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision." *Wurtz*, 761 F.3d at 238 (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). If a federal statute expressly preempts a state law claim, then a defendant cannot be held liable under such state law. *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272–73 (2d Cir. 2005). ERISA's federal preemption provision, § 514(a), states that "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added).

Here, because the Court has diversity jurisdiction over Plaintiff's claims, the issue of complete preemption need not be resolved — if Plaintiff's state law claims

are not completely preempted and the Court lacks federal question jurisdiction over them, his lawsuit may nonetheless remain in federal court because of diversity jurisdiction. *See Epic Reference Labs v. Cigna*, No. 19-cv-1326, 2021 WL 4502836, at *5 (D. Conn. Sept. 30, 2021) (holding that the issue of ERISA § 502 complete preemption need not be resolved when there is diversity jurisdiction); *Wurtz*, 761 F.3d at 238 (reaching the merits of the express preemption defense when the claims in question are not completely preempted but there is "another basis for federal subject matter jurisdiction under [the Class Action Fairness Act]"); *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 570 (S.D.N.Y. 2016) ("Because there is no question regarding the Court's jurisdiction, the Court does not analyze [plaintiff's] state law claims using the doctrine of 'complete preemption.'").

ERISA preempts state laws that "relate to" any employee benefit plan. 29 U.S.C. § 1144(a). The "Savings Clause" excepts from ERISA preemption any state law that "regulates insurance." *Id.* at § 1144(b)(2)(A). The "Deemer Clause" then puts any state laws directed at *self-funded* ERISA plans back into ERISA's preemptive sweep. *Id.* at § 1144(b)(2)(B); *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990). Because Plaintiff's breach of contract and unjust enrichment claims arise under state common law, neither the Savings Clause nor the Deemer Clause affects the preemption analysis in this case. The Court need only determine whether the relevant state common law "relate[s] to" ERISA plans. 29 U.S.C. § 1144(a).

The Supreme Court has held that "a state law relates to an ERISA plan 'if it has a *connection with* or *reference to* such a plan.'" *Egelhoff v. Egelhoff*, 532 U.S. 141,

147 (2001) (emphasis added) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). The Supreme Court has also cautioned courts against giving too broad a reach to ERISA's preemptive sweep: "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law relates to the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983).

Defendant argues that Plaintiff's breach of contract and unjust enrichment claims are expressly preempted because they "'relate to' the administration of an ERISA-governed Plan." Def. Mem. at 10. It argues that "the only way" to decide on Plaintiff's two claims is "by reference to the applicable ERISA Plan documents to see if the ultimate claim determination made by Defendant comports with the terms of the governing Plan." *Id.* at 11.

As it relates to express preemption, Plaintiff argues that because it is not one of the "core ERISA entities," allowing Plaintiff's state law claims to proceed would not interfere with Congress' legislative intent and ERISA's central regulatory concern. Pl. Mem. at 12–14 (quoting *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003)).

For the reasons that follow, the Court finds that ERISA does not preempt Plaintiff's state law claims.

## A. Plaintiff's Claims Do Not Have an Impermissible "Connection with" ERISA Plans

When determining whether a state law has an impermissible connection with ERISA, courts have looked to whether the state law "governs . . . a central matter of plan administration or interferes with nationally uniform plan administration."

*Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016) (citation and internal quotation marks omitted).  Courts have examined "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, and the nature of the effect of the state law on ERISA plans," *Gobeille*, 577 U.S. at 320 (citation omitted), as well as "on the traditional ERISA entities — the employer, the plan and its fiduciaries, and the participants and its beneficiaries." *Epic Reference Labs*, 2021 WL 4502836, at *6 (citation and internal quotation marks omitted).  The objective of ERISA is "to promote the interests of employees and their beneficiaries in employee benefit plans."  *Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)).  ERISA "does not guarantee substantive benefits" but instead "seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." *Gobeille*, 577 U.S. at 320.

Courts have found express preemption where the statutes in question "interfere with uniformity of plan administration." *Epic Reference Labs*, 2021 WL 4502836, at *7.  For example, in *Gobeille*, the Supreme Court found that a Vermont law requiring insurers to report detailed information about claims and plan members interfered with "fundamental components of ERISA's regulation of plan administration." *Gobeille*, 577 U.S. at 323.  In contrast, the Court held that a state law imposing a tax on gross receipts of healthcare facilities is not preempted by ERISA. *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 815–16 (1997).

11

In the specific context of state common law claims brought by healthcare providers, the Supreme Court has held that "lawsuits against ERISA plans for run-of-the-mill state-law claims . . . although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA § 514(a)." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 (1988). The Second Circuit has further explained that lawsuits that "neither interfere[] with the relationships among core ERISA entities nor tend[] to control or supersede their functions" do not risk "undermining the uniformity of the administration of benefits that is ERISA's key concern." *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 61 (2d Cir. 2010). And at least one court in this Circuit has reasoned that (1) such claims often do not interfere with the objective of ERISA, even when they do involve ERISA plans; and (2) preempting providers from pursuing "a remedy to enforce promises of payment made by an insurer" may thwart the purpose of ERISA and "lead medical providers to decide not to treat, or to otherwise screen, patients who are participants in certain plans." *Epic Reference Labs*, 2021 WL 4502836, at *8.

Moreover, numerous courts have held that preempting the claims of providers such as Plaintiff would defeat Congress' legislative goal behind ERISA because the healthcare providers need to rely on insurers' promises of coverage. *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 148 (2d Cir. 2017) (collecting cases from other circuits).

As in the cases above, Plaintiff is a third-party provider bringing state common law claims. If Plaintiff succeeds on its breach of contract and unjust enrichment

claims, such an outcome would only restore Plaintiff to the position it was in before its alleged financial injury.  It would not "bear on any relationships between core ERISA entities," "implicate the substantive terms of the patient's plan," or "create any ongoing legal obligations under the plan." *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 10–11 (D. Conn. 2019) (holding that a promissory estoppel claim was not expressly preempted).  Nor would it affect other existing or future ERISA plans.  Just as the plaintiff's breach of implied contract/promissory estoppel, *quantum meruit*, and unjust enrichment claims in *Epic Reference Labs* did not "relate to" ERISA, Dr. Kripalani's breach of contract and unjust enrichment claims do not have an impermissible connection with ERISA.

Defendant cites authorities in which state law claims were preempted and dismissed, Def. Mem. at 11–12, but its reliance on those cases is misplaced.

In *Norman Maurice Rowe, M.D., M.H.A., LLC v. Oxford Health Ins. Co., Inc.*, 182 N.Y.S.3d 551 (N.Y. Sup. Ct. 2022) (cited in Def. Mem. at 11), there was no independent written agreement nor implied contract like the one here.  The court held that the plaintiff's breach of contract claim was preempted because the only letter was "written to the patient" and did not even guarantee payment, but instead subjected payment to the terms of the plaintiff's ERISA-governed plan.  *Id.* at 961. That is different from the instant case, where Plaintiff alleges that he and Defendant entered into a letter agreement memorializing a Negotiated Amount to resolve their payment dispute, a contract that was independent of the plan that existed between the insurance company and the patient.  Compl. ¶¶ 29–30.

In *Neurological Surgery, P.C. v. Siemens Corp.*, No. 17-cv-3477, 2017 WL 6397737 (E.D.N.Y. Dec. 12, 2017) (cited in Def. Mem. at 12), the court dismissed the plaintiffs' contract and quasi-contract claims because all of the claims were based on the healthcare plan, and the plaintiffs were "unable to point to any written or oral contract" other than alleging that plan coverage constituted a supposed implied contract. *Id.* at 5. This is also different from the instant case, where the parties memorialized the result of their negotiations in a signed letter.

Lastly, in *Chau* (cited in Def. Mem. at 12), each of the plaintiff's claims were "premised on [the defendant's] denial of [plaintiff's] benefits under the Plan" and "makes express reference to the process used to make the termination decision under the Plan." *Chau*, 167 F. Supp. 3d at 571–72. Therefore, *Chau* also differs from this case in terms of the nature of the state law claims in question.

Thus, the Court finds that Plaintiff's claims do not have an impermissible "connection with" ERISA plans.

**B. Plaintiff's State Law Claims Do Not "Refer to" ERISA Plans**

The other category of state law claims expressly preempted by ERISA concerns those that have a "reference to" ERISA plans. Courts look to whether a law "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." *Gobeille*, 577 U.S. at 320–21. Whereas laws that have an impermissible "connection with" ERISA plans overlap with ERISA in terms of function, claims under laws that "refer to" ERISA plans home in on ERISA plans or antecedently require the existence of such plans. "The mere fact that a claim

14

arises against the factual backdrop of an ERISA plan does not mean it makes 'reference to' that plan." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 236 (3d Cir. 2020) (citation omitted).

In *Aesthetic & Reconstructive Breast Ctr., LLC*, the court found that the plaintiff's state claims did not "refer to" ERISA because they arose from "alleged promise of reasonable payment . . . distinct from any obligations that [the insurer] might have had under the plan to the patient." *Aesthetic & Reconstructive Breast Ctr., LLC*, 367 F. Supp. 3d at 10; s*ee also N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) (finding no "reference to" ERISA plans because the surcharges in question would be owed "regardless of whether the commercial coverage or membership, respectively, is ultimately secured by an ERISA plan, private purchase, or otherwise.").

Likewise, accepting all of Plaintiff's allegations in the Complaint as true — which the Court must do here — Plaintiff's breach of contract and unjust enrichment claims concern payments that arise from the parties' signed letter in July/August 2021, which Plaintiff refers to as a "written agreement" or alternatively "an implied-in-law contract." Compl. ¶ 10. Thus, the existence of ERISA plans is not essential to Plaintiff's state law causes of action.

Defendant relies on *Nathaniel L. Tindel, M.D., LLC v. Excellus Blue Cross Blue Shield*, No. 522-cv-971, 2023 WL 3318489, at *7 (N.D.N.Y. May 9, 2023). Def. Mem. at 11. There, the court held that the plaintiff's unjust enrichment claim was preempted by ERISA because the Court needed to "find that an ERISA plan exists in

order to demonstrate that Defendant received a benefit." *Nathaniel L. Tindel, M.D., LLC*, 2023 WL 3318489, at *7 (internal quotation marks omitted).  However, that case overlooks a distinct line of cases related to unjust enrichment claims involving emergency medical services.  For reasons elaborated upon in Part II, *infra*, an insurer may be liable for unjust enrichment if it fails to pay a provider for costs incurred in rendering emergency services.  This is so because medical providers are required by federal law — namely, the Emergency Medical Treatment and Active Labor Act ("EMTALA") — to provide emergency care to patients without regard to insurance. *New York City Health & Hosps. Corp. v. Wellcare of N.Y., Inc.*, 937 N.Y.S.2d 540, 544 (N.Y. Sup. Ct. 2011).  Thus, a court may find a basis for an unjust enrichment claim brought by a provider of emergency medical care *without* needing to find that "an ERISA plan exists." *Nathaniel L. Tindel, M.D., LLC*, 2023 WL 3318489, at *7.

For these reasons, neither Plaintiff's breach of contract claim nor its unjust enrichment claim "refers to" ERISA, and the claims are not expressly preempted by ERISA.

## II.    Plaintiff Sufficiently States an Unjust Enrichment Claim

Defendant argues that Plaintiff has failed to state an unjust enrichment claim. Under New York law, a cause of action for unjust enrichment requires that "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff." *Hayward Baker, Inc. v. C.O. Falter Const. Corp.*, 960 N.Y.S.2d 764, 767 (N.Y. App. Div. 2013).

Defendant argues that it was not enriched because any benefit conferred "would have been conferred on the Patient B.H., not the Defendant." Def. Mem. at 12. Defendant cites cases such as *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) for the proposition the claim administrator of a plan receives no benefit when services are rendered to the insured and it is left with a "ripened obligation to pay money to the insured." Def. Mem. at 13 (quoting *Travelers Indem. Co. of Conn.*, 150 F. Supp. 2d at 563). Defendant also argues that even if it did receive a benefit from Plaintiff, Plaintiff still fails to state a claim because "it is the plaintiff's burden to demonstrate that services were performed for the defendant" or "at the behest" of the defendant. Def. Mem. at 14 (citing *Clark v. Daby*, 751 N.Y.S.2d 622 (N.Y. 2002)).

However, as Plaintiff points out, "New York courts have drawn a clear distinction between unjust enrichment cases involving emergency medical services, and those involving elective medical services." *AA Med., P.C. v. Centene Corp.*, No. 21-cv-5363, 2023 WL 5670682, at *4 (E.D.N.Y. June 30, 2023).

Defendant "relies exclusively on cases involving non-emergent, elective medical treatments." *Id.*, at *5; *see* Def. Mem. at 12–14. Defendant is correct that when a provider brings an unjust enrichment claim against an insurer after it provides *voluntary or elective* medical services to the insured, it must demonstrate that "services were performed for the defendant resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if services were performed at the behest of someone other than the

17

defendant, the plaintiff must look to that person for recovery." *Kagan v. K-Tel Ent., Inc.*, 568 N.Y.S.2d 756, 757 (N.Y. 1991) (citations omitted).  New York courts have dismissed unjust enrichment as well as *quantum meruit* claims in this context because "the plaintiff's . . . services were performed at the behest of the patients/enrollees." *Kirell v. Vytra Health Plans Long Island, Inc.*, 815 N.Y.S.2d 185, 187 (N.Y. App. Div. 2006); s*ee also Pekler v. Health Ins. Plan of Greater N.Y.*, 888 N.Y.S.2d 196, 198 (N.Y. App. Div. 2009) (dismissing a claim in *quantum meruit* for the same reason); *Josephson v. United Healthcare Corp.*, No. 11-cv-3665, 2012 WL 4511365, at *5 (E.D.N.Y. Sept. 28, 2012), *on reconsideration in part*, 2013 WL 3863921 (E.D.N.Y. July 24, 2013) (dismissing an unjust enrichment claim brought by a surgeon against insurer).

However, when a provider brings an unjust enrichment claim against an insurer after it provides *emergency* medical services to the insured, it need not make the same showing.  As Plaintiff argues, because federal laws such as EMTALA compel hospitals to provide emergency services, and insurers cannot prevent the insured from seeking emergency services from out-of-network providers, insurers retain a benefit and are unjustly enriched if they do not pay for the services rendered in full. In *Wellcare*, where this issue was still one of first impression in New York, the court held that the provider-plaintiff adequately stated a claim for unjust enrichment by alleging that it provided emergency services to insurer-defendant's enrollees. *Wellcare*, 937 N.Y.S.2d 540.  In reaching this decision, the court drew on persuasive authority from sister states.  For example, the Supreme Court of Pennsylvania has

18

held that if providers did not have an equitable remedy under the doctrine of unjust enrichment, "entities like [the defendant] could pay a fraction of the value of the benefit supplied by health care providers who treat Medicaid recipients and successfully argue that the doctrine of unjust enrichment was not applicable." *Wellcare*, 937 N.Y.S.2d at 544 (quoting *Temple Univ. Hosp., Inc. v Healthcare Mgmt. Alts., Inc.*, 832 A.2d 501 (Pa. Super. Ct. 2003)).  The Court of Appeals of Tennessee similarly held that when an emergency patient is admitted to a hospital, the provider and the insurer are "required to deal with one another," and the court "must find a contract implied in law, without the assent of either party, on the basis that it is 'dictated by reason and justice.'"  *River Park Hosp., Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 173 S.W.3d 43, 59–60 (Tenn. Ct. App. 2002) (citation omitted).

Here, accepting all of Plaintiff's allegations in the Complaint as true and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has "sufficiently pled that [the] patient's treatment in this case involved emergency services." *AA Med., P.C.*, 2023 WL 5670682, at *5.  Therefore, Plaintiff's claim for unjust enrichment satisfies the elements set out in *Hayward Baker, Inc.*, 960 N.Y.S.2d at 767. Defendant was enriched because it did not pay the Billed Amount (or the Negotiated Amount) for the emergency services provided by Plaintiff.  Defendant was enriched "at the expense of the plaintiff" because Plaintiff was compelled by law to provide emergency services yet did not receive full compensation.  And it would be "inequitable to permit the defendant to retain that which is claimed by the plaintiff" because, under EMTALA, providers are entitled to rely on the prospect of full

19

payment of costs to serve emergency patients without first inquiring into their insurance coverage. *Id.*

Accordingly, because it is neither preempted by ERISA nor insufficiently pled, Plaintiff's unjust enrichment claim survives Defendant's motion to dismiss.

### III.   Plaintiff's Ability to Bring Suit Under ERISA

ERISA § 502(a)(3) empowers a "participant, beneficiary, or fiduciary" to bring suit. 29 U.S.C. § 1132(a)(3). Moreover, there is a "narrow exception to the ERISA standing requirements" that grants standing "to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 329 (2d Cir. 2011) (quoting *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001)).

Defendant argues that Plaintiff is not empowered to bring its ERISA claim because it is not a participant, beneficiary, or fiduciary of an ERISA-governed plan, nor is it a healthcare provider to whom a beneficiary has assigned his claim. Defendant points out that Plaintiff does not allege that Patient directly assigned his benefits to Plaintiff. It further argues that even if Patient did intend to assign his benefits to Plaintiff, that assignment would be invalid because — as reflected in the supplemental exhibits attached to Defendant's motion — the Plan contains an anti-assignment provision that Defendant contends is unambiguous. Def. Mem. at 15–16. Defendant argues that this precludes Plaintiff from bringing suit under ERISA by way of assignment, since if an ERISA-governed plan includes an unambiguous anti-

assignment provision, any alleged assignment is "ineffective — a legal nullity." *McCulloch Orthopedic Surgical Servs., PLLC*, 857 F.3d at 147.

In its opposition, Plaintiff concedes that it is not a participant, beneficiary, or fiduciary of the Plan (and, in fact, describes itself as a "third party" and "not a 'core ERISA entity'"). Pl. Mem. at 14.  However, he contends that it may proceed with its ERISA claim for three reasons: (1) there was an implied assignment of benefits, (2) Defendant waived the anti-assignment provision in the Plan by engaging in negotiations with and making a payment to Plaintiff; and/or (3) the anti-assignment provision is ambiguous because of other provisions in the Plan.  Pl. Mem. at 18–21.

### A. Implied Assignment

Plaintiff argues that the parties' negotiations which were memorialized in a signed letter suggest that "such a[n assignment form] must have existed."  Pl. Mem. at 19.   In particular, Plaintiff alleges that "[t]he fact that Defendant was communicating with the Plaintiff, entering into letter agreement, . . . and eventually making [a] miniscule payment" establishes that Plaintiff had a "right of payment" and that Plaintiff had become the beneficiary through implied assignment.  *Id.*

Some courts have found an assignment of benefits based on prior course of dealings between the parties.  For example, in *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11-cv-8517, 2012 WL 4840807 (S.D.N.Y. Oct. 4, 2012), the district court held that a "long-standing pattern and practice of direct payment to [the plaintiff] is sufficient to show [the defendant's] consent" to an

21

assignment of benefits, even when an anti-assignment provision is contained the patient's insurance contract. *Id.* at *3.

While this issue is a close one, the Court finds that Plaintiff has established that he is entitled to proceed with his ERISA claim because he has adequately pled facts that, taken in the light most favorable to him, Defendant consented to the implied assignment of his claim.   In particular, he has alleged that while the parties were negotiating the total amount owed, Defendant made a direct and voluntary partial payment to him of $1,961.99 for the emergency medical care he provided to Patient (even if that payment was only a "miniscule" portion of the total amount outstanding).  Plaintiff has also alleged that he has, in the past, received payments under analogous circumstances directly from other associate insurance companies within the Blue Cross & Blue Shield Association.   In this regard, Plaintiff's allegations are sufficiently similar to other cases in which an insurer's motion to dismiss has been denied because the Plaintiff had adequately pled facts sufficient to proceed with his ERISA claim. *See, e.g.*, *Neurological Surgery, P.C. v. Oxford Health Plans (NY), Inc.*, No. 18-cv-560, 2020 WL 13931876, at *8 (E.D.N.Y. Oct. 30, 2020) (finding that plaintiff adequately pled that defendant-insurer consented to assignment based on, *inter alia,* defendant's previous payments to out-of-network plaintiff, and that Plaintiff's ERISA claims may proceed to discovery).

Accordingly, Plaintiff has adequately pled that he has standing to bring an ERISA claim against Defendant in this circumstance.

## B. The Plan Description Falls Outside the Scope of Review

Defendant argues that regardless of whether Plaintiff was assigned the right to recover payment for Patient's care (either directly or impliedly), any assignment that took place is nonetheless void because the Plan contains an anti-assignment clause, which, according to Defendant, unambiguously bars Plaintiff from acting as an assignee.  Def. Mem. at 15–16.

Before reaching Defendant's argument, however, the Court must consider the threshold question of whether it will consider the Plan Description attached to Defendant's opposition as part of the motion to dismiss the complaint.  For the reasons explained below, the Court will not do so.

The Second Circuit has held that a court may review an extrinsic document when deciding a motion to dismiss "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  It has further clarified that a court may consider such a document only when plaintiff has relied on it to a significant extent — "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153.

Here, Plaintiff's Complaint does not rely on the Plan Description to "fram[e]" its claims. *Cortec Indus., Inc.*, 959 F.2d at 48.  His factual allegation that Defendant acts as an administrator of a plan does not rely on any specific content or attributes

23

of said plan; its breach of contract and unjust enrichment claims rely on alleged obligations arising from the negotiations and signed letter between the parties; its ERISA violation claim centers around statutes, not the terms of the Plan.

Defendant analogizes to *Professional Orthopaedic Associates, PA v. 1199 National Benefit Fund*, No. 16-cv-4838, 2016 WL 6900686, at *1 (S.D.N.Y. Nov. 22, 2016), *aff'd sub nom. Pro. Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39 (2d Cir. 2017), a case where the court considered the health insurance plan summary on a motion to dismiss even though it was an extrinsic document. However, this analogy is inapposite because the complaint in *Pro. Orthopaedic Assocs., PA* explicitly referenced specific terms from the insurance plan in framing its claims. Compl., *Pro. Orthopaedic Assocs., PA*, ECF No. 3. For example, the complaint in that case alleges that "Defendant is required under *the terms of its healthcare contract* to pay" and that "Defendant has breached its ERISA-governed *plan language*." *Id.* at ¶¶ 11–12 (emphasis added). The Complaint in the instant case, by contrast, does not assert any claims that arise from the contents of the Plan Description itself.

Accordingly, the Court will not consider the Plan Description produced by Defendant for this motion and will therefore not address the parties' arguments related to the purported anti-assignment clause and Defendants' alleged waiver of it at this juncture. The Court does so, however, without prejudice to (1) Defendant's right to renew its claims related to the anti-assignment clause in the Plan

Description, and (2) Plaintiff's right to present its counterarguments as to the purpose and effect of that clause, at a later stage in this litigation.

Finally, because the Court finds that Plaintiff has adequately alleged that it may bring claims under New York State law and ERISA, the Court need not address whether medical providers like Plaintiff have a private right of action to recover the costs of emergency medical care from insurers under 42 U.S.C. § 300gg-19a(b) and its accompanying regulations.

## **CONCLUSION**

For the foregoing reasons, the Court denies Defendant's motion to dismiss.

SO ORDERED.

/s/ Nina R. Morrison

NINA R. MORRISON
United States District Judge

Dated: Brooklyn, New York
        September 30, 2024